UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KELLY J. BURGE, Individually, and
CRYSTAL MAY, as Parent and Next
Best Friend of KAYLAMARIE,
a minor,

       Plaintiffs,

v.                                                        Civ. No. 10-0069 MV/WDS

THE UNITED STATES OF AMERICA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant the United States of America's Motion for Summary Judgment [Doc. 45]. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the Motion is well-taken and will be GRANTED.

## BACKGROUND

This action arises out of an accident on or about March 25, 2007, when Andres Garcia drove his car into Plaintiffs as they were riding mopeds or scooters on Tanager Road, SW in Albuquerque, New Mexico. Doc. 1, ¶ 3. Mr. Garcia was a Vietnam veteran at the time of the accident. Doc. 46-1, ¶ 5. Since 1967, he had been receiving medical care at the Raymond G. Murphy Veterans Administration Medical Center ("VA Medical Center") in Albuquerque, New Mexico. *Id.*; Doc. 55-1 at 47. Mr. Garcia suffered from several significant medical conditions including paranoid schizophrenia, which was connected to his military service and from which he was 100 percent disabled. Doc. 46-1, ¶ 7. Mr. Garcia had last been hospitalized due to mental illness in 2003. *Id.*, ¶ 9. At the time of the accident, Mr. Garcia was not hospitalized. *Id.*

Rather, he was living at home with his 87 year-old mother. *Id.*, ¶ 16. Since November 2004, Mr. Garcia had been prescribed the following medications by the VA Medical Center: Olanzapine, 15 mg, for schizophrenia; Citalopram, 40 mg, for depression; and Trazodone for sleep and depression. *Id.*, ¶ 13.

Mr. Garcia was last seen at the VA Medical Center on March 21, 2007, four days prior to the subject accident, by Dr. Trevino, his psychiatrist. *Id.*, ¶ 19. Dr. Trevino's contemporaneous notes from that visit indicate that Mr. Garcia reported that he was doing well, that his medications were effective with no side effects, and that he was exercising and getting along with his mother. *Id.*, ¶ 22. Dr. Trevino found Mr. Garcia to be cooperative with fair eye contact, and found his insight to be adequate. *Id.*, ¶ 20. Further, Dr. Trevino noted that Mr. Garcia did not have a recent history of agitation or substance abuse. *Id.*, ¶ 21. No one at the VA Medical Center administered medication to Mr. Garcia during the March 21, 2007 appointment, or at any other time prior to the subject accident. *Id.*, ¶ 23. There is no evidence that Mr. Garcia ever spoke to his medical providers at the VA Medical Center of Plaintiffs Kelly Burge, Crystal May, or Kaylamarie May, or that he had any relationship with or knew of Plaintiffs prior to the subject accident. *Id.*, ¶ 28.

On January 27, 2010, Plaintiffs commenced this medical malpractice action pursuant to the Federal Tort Claims Act ("FTCA"). Doc. 1, ¶ 1. Plaintiffs allege that Defendant, the United States of America, and its employees and agents were negligent in the medical treatment and care of Mr. Garcia, allowing him to be involved in the subject accident with Plaintiffs. *Id.*, ¶ 4. On August 8, 2011, Defendant filed the instant motion for summary judgment, seeking to dismiss Plaintiffs' Complaint for Damages, on the bases that: (1) Defendant did not owe a duty of care to Plaintiffs; and (2) Plaintiffs do not have evidence that Defendant's employees

breached the standard of care. On August 22, 2011, Plaintiffs filed a response in opposition, arguing that Defendant had a duty to control Mr. Garcia, and that Mr. Garcia "ought never to have been released from Defendant's custody, given its prior knowledge of Mr. Garcia's deteriorated mental condition . . . and his pattern of delusions and confusion about his medications in which Defendants' role ranged from benign neglect to gross negligence." Doc. 55 at 2. The Court agrees with Defendant that, under governing New Mexico law and based on the undisputed facts, Defendant, as Mr. Garcia's medical provider, did not owe a duty of care to Plaintiffs, as third party non-patients. As set forth herein, summary judgment must be granted on this basis alone. Accordingly, the Court need not reach the issue of whether Plaintiffs have evidence that Defendant's employees breached the standard of care.

## DISCUSSION

I.  Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.

1993).  There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial."  *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp. at 1281.

II.Duty of Care Owed by Defendant, as Mr. Garcia's Medical Provider, to Plaintiffs, as Third Party Non-Patients

A.Legal Standard

"It is well-settled that no action lies against the United States unless Congress has authorized it."  *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006).  The FTCA:

> permits individuals to sue the Government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id.* (quoting 28 U.S.C. § 1346(b)(1)).  "Under the FTCA, the Government is liable in the same

manner and to the same extent as a private individual under like circumstances, and in accordance with the law of the place where the act . . . occurred." *Miller*, 463 F.3d at 1123. Accordingly, the Court looks to the state law where the allegedly negligent acts occurred "to resolve questions of substantive liability." *Id.* Here, the negligent medical treatment and care of Mr. Garcia is alleged to have occurred in New Mexico. Accordingly, the Court must apply New Mexico law to determine Defendant's liability to Plaintiffs.[1]

Under New Mexico law, the elements of a negligence claim are: "(1) the existence of a duty running from the defendant to the plaintiff; (2) a breach of that duty based on a reasonable care standard; and (3) the breach of duty is both the proximate and in-fact cause of the plaintiff's damages." *Ross v. City of Las Cruces*, 229 P.3d 1253, 1256 (2009). At issue here is the first element, whether Defendant, as Mr. Garcia's medical provider, owed a duty of care to Plaintiffs, as third persons. This is "a question of law to be determined by the court." *Id.*

The general rule in New Mexico regarding duty "is that an individual has no duty to protect another from harm." *Id.* at 1257. With regard to the specific issue of the duty owed by medical professionals to third persons, "the general rule in New Mexico is that a physician owes a duty to his or her patient, and not to third party non-patients." *Id.* An exception to this general rule may apply if a doctor exerts control over a patient (duty of control), or if he or she fails to warn or disclose a patient's threats against a specific, identifiable third party to the authorities or the individual (duty to warn).

The undisputed facts demonstrate that Mr. Garcia never made any threats against

---

[1] In support of their opposition to Defendant's motion, Plaintiffs cite law from jurisdictions other than New Mexico. Because New Mexico law is the substantive law that governs this case, to the extent that the precedent cited by Plaintiffs is inconsistent with New Mexico law, that precedent is inapposite.

Plaintiffs specifically. Accordingly, at issue here is whether Defendant owed a duty to Plaintiffs to control Mr. Garcia. The determination of whether this duty exists "requires an analysis of both foreseeability and policy." *Id.*

        1.        <u>Foreseeablity</u>

In analyzing foreseeability and a medical provider's duty to non-patient third parties, the Court must carefully balance "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant." *Wilschinsky v. Medina*, 775 P.2d 713, 715 (N.M. 1989). In *Wilschinsky*, a doctor had injected his patient with a narcotic while the patient was in his office. *Id.* at 714. The narcotic was known to have side effects that would impact the patient's ability to drive. *Id.* at 715. The doctor allowed the patient to leave the office after receiving the injection, and seventy minutes later, the patient was involved in an accident that caused injury to a third party. *Id.* The New Mexico Supreme Court found that the likelihood of a car accident immediately following the injection of a narcotic was high, the burden of guarding against the foreseeable danger was not unreasonable based on the medical standards with which the doctor was required to comply, and the consequences of the additional burden on the doctor's treatment decisions would not be significant if the scope of the doctor's duty was limited to conducting himself within the professional standards of acceptable medical practice. *Id.* at 717. Based on this analysis, "the Court created a very narrow exception to the general rule that a physician does not owe a duty to third party non-patients." *Ross*, 229 P.3d at 1258. Specifically, the Court found that doctors owe a duty to the limited group of third parties who are "persons injured by patients driving automobiles from a doctor's office when the patient has just been injected with drugs known to affect the judgment and driving ability." *Wilschinsky*, 775 P.2d at 717. The Court specifically instructed that its holding did not "create a

general duty to the public," and that the duty "is not to the entire public for any injuries suffered for which an argument of causation can be made." *Id.*

In *Lester v E.B. Hall, M.D.*, 970 P.2d 590 (N.M. 1998), the New Mexico Supreme Court, on certification of a case from this Court, declined to expand the narrow exception defined in *Wilschinsky* to a situation where a non-patient was injured in a collision with a car operated by the physician's patient, who was last treated by the physician five days before the collision, and whose ability to drive allegedly was impaired by medications prescribed by the physician. In *Lester*, the doctor had prescribed lithium, in addition to other medications, to his patient while treating him for a medical condition. *Id.* at 591. Factual disputes existed as to whether the doctor properly monitored his patient's lithium levels, and whether he warned the patient concerning the side effects of the lithium on his ability to drive. *Id.* Applying the *Wilschinsky* balancing test, the Court determined that the likelihood of injury was "not foreseeable to the degree required in order to warrant a duty." *Id.* at 592. The Court stated that "[t]he likelihood that a patient using prescription lithium will cause a car accident five days after contact with the doctor is considerably more remote in comparison to a patient who, injected with a narcotic, will cause an accident while driving away from the doctor's office." *Id.* Next, the Court determined that the magnitude of the burden a duty to a third party would place on a doctor prescribing medication was too high. *Id.* Specifically, the court explained that the patient's "taking of the drug outside of [the doctor]'s control made preventative measures more difficult and reliance on professional judgment more remote." *Id.* Finally, the Court found that the consequences of placing upon the doctor the burden of guarding against the plaintiff's injury "militates against extension of the duty," noting that extending the duty in this situation would "have a potentially serious chilling effect on the use of prescription medication in medical care," and would intrude

7

"upon the indispensable loyalty which physicians must maintain towards their patients regarding their medical care and treatment decisions." *Id.* at 593.  Quoting *Wilschinsky*, the Court stated that "doctors should not be asked to weigh notions of liability in their already complex universe of patient care." *Id.*

In *Weitz v. Lovelace Health System, Inc.*, the Tenth Circuit applied New Mexico law to address the specific issue of "whether a health care provider can owe a duty to third parties arising from control where the individual is being treated on an outpatient basis."  214 F.3d 1175, 1182 (10th Cir. 2000).  There, a man who had been receiving outpatient counseling services from a health care provider shot and killed his wife and daughter, and then took his own life, approximately three weeks after the patient's last encounter with the health care provider. *Id.* at 1176.  The Court determined that "[t]he strong weight of authority suggests that New Mexico would not find such a duty exists under these circumstances." *Id.* at 1182.  The Court noted that "the relationship a psychiatric outpatient has with the health care provider is less involved than that of an inpatient," because "the outpatient relationship usually requires that the treated individual care for most of his or her daily needs, and affords the health care provider only limited opportunity to supervise the patient." *Id.*  As a result, the Court concluded, "imposing a duty to control in the outpatient context would require providers to exercise a degree of care and oversight that would be practically unworkable." *Id.*

In *Ross*, the New Mexico Court of Appeals applied the *Wilschinsky* balancing test, and declined to extend the duty of care from a doctor to a third party who was killed in a car accident caused by a patient who had been released from the defendant's care twelve days prior to the accident.  The patient "had an extensive history of psychiatric illness," a history of violence, and a history of "numerous encounters with mental health care providers and the police." *Id.* at

8

1255.  Most recently before the incident, after a hearing for a misdemeanor assault on a family member, he was admitted to the hospital for an evaluation of whether he should be civilly committed.  *Id.*  He was discharged after five days, and twelve days later, caused the subject accident.  *Id.*  The Court found that the likelihood of injury to the plaintiff based on the defendants' actions was not foreseeable to the extent necessary to create a duty on the part of the defendants, noting that it had been twelve days since the patient had been in contact with the defendants, and the patient did not have an ongoing patient-provider relationship with the defendants at the time of the accident.  *Id.* at 1259.  Next, the Court found that the magnitude of the burden that would be created by imposing a duty on the defendants would be too high, as "[p]atients who have been discharged from care are even farther beyond the scope of a health care providers' control than are patients seen on an outpatient basis."  *Id.*  The Court thus agreed with the Tenth Circuit in *Weitz* that "imposing a duty to control in this context is unworkable."  *Id.* at 1260.  Finally, the Court found that the potential consequences of imposing a duty to third parties on health care providers is significant, as extending the duty under the facts before it might "cause doctors to be more inclined to commit patients more frequently and for longer periods than are necessary in order to avoid possible liability for the patient's future actions."  *Id.*  The Court thus concluded that the defendants did not have "the right or ability to control [the patient's] conduct at the time of the accident," and thus had no duty to the plaintiff, as a third party, to control the patient.  *Id.*

    2.  Public Policy

 In determining whether a medical provider owes a duty to a third party, the Court must consider not only whether the plaintiff is a foreseeable party to the doctor's treatment of his or her patient, but also whether "the public policy of New Mexico supports a duty that runs" from

the defendant to the plaintiff. *Lester*, 970 P.2d at 593. In *Lester*, the Court noted that, through enactment of the Medical Malpractice Act (the "Act"), the New Mexico Legislature has spoken with regard to the need to limit health care providers' liability: the stated purpose of the Act is "to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." *Id.* The Court further noted that "the Legislature's determination that health care providers' liability must be limited in order to assure New Mexicans' access to medical care is demonstrated by damage caps, shorter statutes of limitations, and required evaluation and decision by the medical review commission." *Id.* The Court concluded that, although there is judicial authority to recognize a duty running from doctors to third parties, that authority "must be exercised sparingly, especially where the Legislature has spoken in a manner inconsistent with the expansion of tort liability for health care providers." *Id.*

### B. Defendant's Duty to Plaintiffs to Control Mr. Garcia

Under the *Wilschinsky* balancing test, it would be improper to extend the duty of care from Defendant, as Mr. Garcia's medical care provider, to Plaintiffs, who were injured in a car accident with Mr. Garcia. First, the likelihood of injury was "not foreseeable to the degree required in order to warrant a duty." *Lester*, 970 P.2d at 592. At the time of the accident, Mr. Garcia had been prescribed the same three medications, at the same doses, for almost three years, without incident. At his doctor's visit four days prior to the accident, Mr. Garcia reported that his medications were effective with no ill side-effects. Under these circumstances, the likelihood that Mr. Garcia, using his prescription medications, would cause a car accident four days after contact with the doctor, "is considerably more remote in comparison to a patient [like the patient in *Wilschinsky*] who, injected with a narcotic, will cause an accident while driving

away from the doctor's office." *Id.*

Next, the magnitude of the burden a duty to a third party would place on Defendant, a medical provider prescribing medication to an outpatient, is too high. Specifically, the VA Medical Center prescribed medication to Mr. Garcia; it did not administer that medication to him in their offices. Mr. Garcia's taking of medication outside of the control of the VA Medical Center "made preventative measures more difficult and reliance on professional judgment more remote." *Id.* Similarly, because Mr. Garcia was an outpatient of the VA Medical Center, the VA Medical Center was not responsible for his daily needs, and had "only limited opportunity to supervise him." *Weitz*, 214 F.3d at 1182. Accordingly, imposing a duty to control in this outpatient context would require Defendant "to exercise a degree of care and oversight that would be practically unworkable." *Id.*

Finally, the consequences of placing upon Defendant the burden of guarding against Plaintiffs' injury "militates against extension of the duty." *Lester*, 970 P.2d at 593. Imposing a duty based on the prescribing of medication to Mr. Garcia would "have a potentially serious chilling effect on the use of prescription medication in medical care," and would "intrude upon the indispensable loyalty which physicians must maintain towards their patients regarding their medical care and treatment decisions." *Id.* At the same time, imposing a duty based on the VA Medical Center's decision to discharge Mr. Garcia in 2003 would "cause doctors to be more inclined to commit patients more frequently and for longer periods than are necessary in order to avoid possible liability for the patient's future actions." *Ross*, 229 P.3d at 1260. For these reasons, the Court concludes that Defendant did not have "the right or ability to control [Mr. Garcia]'s conduct at the time of the accident," and thus had no duty to Plaintiffs, as third parties, to control Mr. Garcia. *Id.*

Moreover, the public policy of New Mexico does not support a duty that runs from Defendant to Plaintiffs. As the New Mexico Supreme Court made clear in *Lester*, "the Legislature has spoken in a manner inconsistent with the expansion of tort liability for health care providers." 970 P.2d at 593. Neither the Legislature, nor the courts of New Mexico, have expressed a public policy that supports imposition of a duty under the circumstances that exist here. Accordingly, the facts of the present case do not warrant the exercise of this Court's authority, which must be exercised sparingly, to extend the duty of care from Defendant, as Mr. Garcia's medical provider, to Plaintiffs, as third parties injured by Mr. Garcia.

## CONCLUSION

Because Plaintiffs were not foreseeable parties to Defendant's treatment of Mr. Garcia, and because the public policy of New Mexico does not support a duty running from Defendant to Plaintiffs, as a matter of law, Defendant owed no duty to Plaintiffs. Plaintiffs thus cannot prove an essential element of their negligence claim against Defendant. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' Complaint.

**IT IS THEREFORE ORDERED** that Defendant the United States of America's Motion for Summary Judgment [Doc. 45] is **GRANTED**.

DATED this 27th day of March, 2012.

_____
MARTHA VAZQUEZ
United States District Court Judge